```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
```
JOHN VITERITTI and
MARGUERITE VITERITTI,

                    Plaintiffs,              **MEMORANDUM & ORDER**
   -against-                               10 CV 3283 (DRH) (ARL)

INCORPORATED VILLAGE OF BAYVILLE,

                    Defendant.
```
----------------------------------------------------------X
```
**APPEARANCES:**

**EDWARDS & EDWARDS**
Attorneys for Plaintiff
336 South Ocean Avenue
Freeport, New York 11520
By:    Harrison J. Edwards, Esq.

**MORRIS DUFFY ALONSO & FALEY**
Attorneys for Defendant
Two Rector Street
New York, New York 10006
By:    Drew William Sumner, Esq.
        Carl S. Sandel, Esq.

**HURLEY, Senior District Judge:**

       Plaintiffs John and Marguerite Viteritti ("plaintiffs" or "the Viterittis") commenced this action alleging that defendant Incorporated Village of Bayville ("defendant" or the "Village") seized a portion of their real property without providing them with just compensation in violation of their Fifth Amendment rights. Plaintiffs also assert a Fourteenth Amendment equal protection claim as well as state law causes of action for trespass, private nuisance, negligence, and violations of Section 853 of the New York Real Property Actions and Proceedings Law. Presently before the Court is defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, defendant's motion is granted.

**BACKGROUND**

The following factual recitation is gleaned from the pleadings and exhibits attached thereto.

***The Property***

The Viterittis are a married couple who reside at and own certain real property located at 1 Tides Court, Bayville, New York, which is "more fully described as Section 29, Block 104, Lots 20 and 27 on a Land and Tax Map duly filed in the Office of the Clerk of the County of Nassau" (the "Property").[1] (Compl. ¶¶ 1-4.) The Village is a municipal corporation duly organized and existing under the laws of the State of New York. (*Id.* ¶ 6.)[2]

The area surrounding the Property consists of one public road and several private streets. Godfrey Avenue, one of only three public roads in the entire Village, lies south of the Property and intersects with Shore Road. (*Id.* ¶ 18.) Shore Road, in turn, runs in a northeasterly direction from its intersection with Godfrey Avenue until it dead-ends "at a 'T' intersection" with Tides Court, a private cul-de-sac located "in front of" the Property. (*Id.* ¶¶ 16, 18, 19.) According to plaintiffs, Shore Road "is a private road owned by the owners of Tides Court properties, including plaintiffs herein, and owners of Shore Road properties." (*Id.* ¶ 22.) Plaintiffs allege that between approximately 1973 and April 21, 2009, all vehicular traffic accessed Tides Court by traveling north on Shore Road from Godfrey Avenue. (*Id.* ¶ 18.) That portion of Shore Road

---

[1] Defendant has attached a copy of the relevant portion of the Nassau County Tax Map to their Answer. (Ans., Ex. A.) Reference is made thereto solely for the purpose of illustrating the layout of the Property and surrounding area in the context of the present motion.

[2] Although the Complaint includes the Village Board of Trustees, which is described as "the governing body" of the Village, under the sub-heading "Defendant" (Compl. ¶ 7), the Village Board of Trustees is not listed as a defendant in the caption.

"has never been a public road." (*Id.* ¶ 22.)

Between approximately 1973 and April 21, 2009, the southern portion of the Property that abutted the "'T' intersection" of Tides Court and Shore Road consisted of "a manicured landscaped lawn with miscellaneous decorative boulders located on it." (*Id.* ¶ 17.) The northerly portion of that section of the Property contained a fence and hedge. (*Id.* ¶ 23.) North of the Property, "Shore Road resume[d], projecting north and intersect[ing] with three other private roads – Saltaire Lane, Washington Avenue and Arlington Lane." (*Id.* ¶ 24.) In other words, for thirty-six years prior to April 21, 2009, these three private roads, which lay north of the Property, merged into Shore Road, ran south toward the Property, and "'dead ended' at the northerly end of the Viteritti property line adjacent to" the fence and hedge. (*Id.* ¶ 25.)

To partially reiterate, plaintiffs describe the area surrounding the Property as follows: "For thirty-six years prior to April 21, 2009, the private road known as and by Shore Road stopped at plaintiff[s'] southerly property line and resumed at plaintiff's northerly property line at the Viteritti fence and hedge." (*Id.* ¶ 27.) The area of the Property at issue here (the "Disputed Area") lays between Shore Road's T-intersection with Tides Court on the southern edge of the Property and the location where Shore Road resumed north of the Property. Plaintiffs allege that the Disputed Area was "used as private property and [was] improved with a manicured landscaped lawn . . . together with [a] fence and hedge . . . ." (*id.* ¶ 28), and during that time "there was no vehicular traffic across" the Property (*id.* ¶ 29).

***The State Court Action***

On January 7, 2005, the Village commenced an action against plaintiffs in New York State Supreme Court, Nassau County (the "State Court Action") before trial judge Kenneth A.

3

Davis. Judge Davis described the State Court Action as "an action for a permanent injunction restraining [the Viterittis] from obstructing Shore Road, a paved thoroughfare located in the Village of Bayville." (Ans., Ex. C at 1, 4.) More specifically, the Village sought to have the Disputed Area of the Property (which Judge Davis referred to as "the barricade") declared a public nuisance and removed. (*Id.* at 4.) The Viterittis counterclaimed seeking a declaratory judgment that the Disputed Area "is part of their private property and not a Village Street." (*Id.* at 4-5.)

On January 29, 2008, Judge Davis rendered a decision on the parties' motions for summary judgment in the State Court Action. (Ans., Ex. C.) In that decision, he described the Disputed Area as follows:

> In 1976, John Viteritti erected a barricade across Shore Road at a point north of its intersection with Tides Court and between lot 20 and lot 27. The barricade is 29 feet long and 4 ½ feet high. It is presently comprised of "decorative boulders," a fence, shrubs, grass, and Belgium blocks. . . . Because of the barricade, Tides Court is not accessible from streets to the north. The only means of ingress is to take Godfrey Avenue to Shore Road, approaching from the south.

(*Id.* at 3.) After reviewing the evidentiary record, Judge Davis concluded that Shore Road was not a public street (*id.* at 7-8), but noted that "a public nuisance may also exist on private property, if the property, health or safety of a considerable number of persons is effected" (*id.* at 9). He ultimately concluded that the barricade constituted a public nuisance to the residents living south of the barricade because "it interfered with their rights to fire protection and also police, ambulance, and other emergency services. The barricade also interfere[d] with public access to Shore Road . . . ." (*Id.*) Judge Davis declined to issue a mandatory injunction requiring the Viterittis to remove the barricade, but ruled that "the Village may remove the obstruction

4

itself, subject to a right of recoupment of expense from the [Viterittis]." (*Id.* at 10-11.) Thus, an injunction was issued that prohibited the Viterittis "from interfering with efforts of the Village to remove the barricade on Shore Road." (*Id.* at 11.)

*The Village's Subsequent Alleged Conduct*

Plaintiffs allege that on April 21, 2009, the Village took possession of, and forcibly ejected them from, a 100-foot-by-25-foot portion of the Property without plaintiffs' consent. (Compl. ¶ 32.) According to plaintiffs, the Village removed plaintiffs' lawn, decorative boulders, fence, and shrubbery irrigation system and, by "connecting Shore Road north of plaintiffs' property to Shore Road south of [plaintiffs'] property, [the Village] create[d] a thru-street across plaintiffs' property without plaintiffs' permission, consent or authorization." (*Id.* ¶¶ 34, 35.)

*The Complaint*

The Complaint was originally filed in New York Supreme Court, Nassau County on June 30, 2010. Defendant removed the action to this Court on July 19, 2010 based on federal question jurisdiction. Plaintiffs assert eight causes of action against the Village. With respect to the federal causes of action, plaintiffs allege that defendant "has taken plaintiffs' property without just compensation and/or without due process of law" in violation of the Fifth Amendment (*id.* ¶ 61), and has denied plaintiffs' their Fourteenth Amendment rights to "the equal protection of law" (*id.* ¶ 74.) Plaintiffs also assert a cause of action entitled "Civil Rights," which alleges that defendant has "deprived plaintiffs of their civil rights under the United States Constitution, the New York State Constitution, New York Eminent Domain Procedure Law, and the Real Property Actions Procedure Law, all in violation of 42 U.S.C. § 1983." (*Id.* ¶ 69.)

5

Plaintiffs also assert state law claims for trespass, private nuisance, and a violation of Section 853 of the New York Real Property Actions and Proceedings Law ("NY RPAPL") based on defendant's alleged forcible ejection of plaintiffs from a portion of the Property. In addition, plaintiffs allege that the Village "negligently constructed a structure [i.e., a roadway] on plaintiffs' property . . . ." (*Id.* ¶ 63.)

Plaintiffs seek an award of monetary damages, a declaratory judgment that defendant violated plaintiffs' constitutional rights, and permanent injunctive relief prohibiting defendant from interfering with plaintiffs' rights to the Property.

## *DISCUSSION*

### I. **Legal Standard**

"'In deciding a Rule 12(c) motion, [a court] appl[ies] the same standard [regarding the sufficiency of a pleading] as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 89 (2d Cir. 2006) (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S.

at 561 (quoting *Conley*, 355 U.S. at 45-46). Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads

7

> facts that are "merely consistent with" a defendant's liability,
> it "stops short of the line between possibility and plausibility
> of 'entitlement to relief.'"

*Id*. at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

## II.     *Documents Attached to the Answer*

In moving for dismissal of the Complaint, defendant relies heavily upon documents attached to its Answer, particularly the Nassau County Land and Tax Map as well as Judge Davis's January 29, 2008 decision in the State Court Action. Plaintiffs argue that the Court may not properly consider exhibits attached to the Answer, but must consider only "facts . . . taken directly from the complaint." (Pls.' Opp'n at 6.) As the Second Circuit has recently reiterated: "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). Because there is no dispute that the documents cited by defendant in support of its motion were actually appended to the Answer, the Court may properly consider them. *See id.* (finding that documents attached to an answer may be considered on a Rule 12(c) motion).

## III.    *The Parties' Contentions*

Defendant argues that plaintiffs' Fifth Amendment takings claim is barred by the doctrine of *res judicata*. Specifically, defendant asserts that Judge Davis's "determination that the

8

[Disputed Area] was in fact a roadway that had been barricaded is determinative of every issue raised by plaintiff[s] in this action, and, moreover, disproves every cause of action raised." (Def.'s Mem. at 5.) Defendant also contends that plaintiffs' equal protection claim is inadequately pled "under a class of one theory" because "Judge Davis's reasons for permitting the Village to remove the barricades were rationally related to a legitimate government interest . . . [in] the provision of fire and police protection and other emergency services to its citizens." (Reply Mem. at 6.) Finally, defendant asserts that plaintiffs' state law claims should be dismissed as barred by *res judicata* and because they fail to state a claim as a matter of law. (*Id.* at 6-7.)

Plaintiffs counter that the doctrine of *res judicata* does not bar their Fifth Amendment takings claim because "the factual construct alleged in plaintiffs' complaint is later in time and different in nature than involved in the earlier State Court action." (Pls.' Opp'n at 7.) According to plaintiffs, while Judge Davis found that the 29 foot long, 4 ½ foot high barricade constituted a public nuisance on private property, "[t]he State Court did not imbue Bayville with authorization to build a 25' x 100' road across plaintiffs' front lawn." (*Id.* at 4.)

## IV.   **Plaintiffs' Section 1983 Claims**

### A.   *Section 1983*

A plaintiff may assert a cause of action pursuant to Section 1983 against any "person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Because "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a

method for vindicating federal rights elsewhere conferred' . . . [t]he first step in [analyzing] any such claim is to identify the specific [federal] right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

### B. *Plaintiffs' Fifth Amendment Takings Claim is not Ripe for Review*

Article III of the Constitution requires that all cases or controversies be ripe for judicial review. *Sunrise Dev., Inc. v. Town of Huntington*, 62 F. Supp. 2d 762, 770 (E.D.N.Y. 1999) ("In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication of administrative action.") (internal quotation marks and citation omitted). Because "[r]ipeness is a jurisdictional inquiry," the Court must initially consider the ripeness of this matter. *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) (citing *Vandor, Inc. v. Militello*, 301 F.3d 37, 38 (2d Cir. 2002)). The Court "must presume that [it] cannot entertain the [plaintiffs'] claims 'unless the contrary appears affirmatively from the record.'" *Id.* (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991) ("Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so.")).

To determine whether a case is ripe for review, the Court is "generally require[d]" to "'evaluate both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). "Building on the foregoing, the Supreme Court has developed specific ripeness requirements applicable to land use disputes." *Id.* at 347. In *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), the Supreme Court considered whether the application of certain zoning laws constituted a taking without just compensation in

violation of the Fifth Amendment.  The Court established the following two-pronged test that the plaintiff was required to satisfy in order to maintain its lawsuit.  First, the plaintiff had to show that prior to commencing its suit, it had "obtain[ed] a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations." *Murphy*, 402 F.3d at 348 (citing *Williamson*, 473 U.S. at 186).  Second, the plaintiff was required to demonstrate that it sought "compensation for an alleged taking before proceeding to federal court." *Id.* at 349 (citing *Williamson*, 473 U.S. at 194).  While *Williamson* dealt with a regulatory (as opposed to physical) taking, the Second Circuit has explicitly found that the second prong of the *Williamson* test applies to both types of takings:

> *Williamson* drew no distinction between physical and regulatory takings, and the rationale of that case, that a 'property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State,' demonstrates that any such distinction would be unjustified.

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995) (internal citation omitted); *see also TZ Manor, LLC v. Daines*, 2009 WL 2242436, at *6 n.3 (S.D.N.Y. July 28, 2009) ("The *Williamson* requirement that a plaintiff seek compensation through available state procedures has never been limited to cases involving land use regulations; rather, it applies to physical as well as regulatory takings.") (internal quotation marks omitted).

Thus, under *Williamson*, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson*, 473 U.S. 195.  "In New York, there are 'two such reasonable certain and adequate provision[s].  One is to seek

11

compensation through the procedures detailed in the New York State Eminent Domain Procedure Law. The other is to bring a state law action under Article I, Section 7 of the New York State Constitution.'" *Livant v. Clifton*, 334 F. Supp. 2d 321, 326 (E.D.N.Y. 2004) (quoting *Vaizburd v. United States*, 90 F. Supp. 2d 210, 216-17 (E.D.N.Y. 2000)) (alteration in the original), *aff'd* 272 Fed. Appx. 113 (2d Cir. 2008). Courts within the Second Circuit have uniformly dismissed Fifth Amendment takings claims at the pleadings stage when plaintiffs fail to sufficiently allege that they have availed themselves of such state procedures. *See, e.g.*, *Vandor, Inc.*, 310 F.3d at 38-39 (affirming dismissal of takings claim, which was "unripe where a remedy potentially is available under the state constitution's provision") (internal quotation marks omitted); *Rahl v. N.Y. Tel. Co.*, 2010 WL 3338832, at **4-5 (N.D.N.Y. Aug. 24, 2010) (dismissing takings claim as unripe when plaintiff failed to allege "that he availed himself of any state procedure" in an attempt "to gain just compensation"); *Livant*, 334 F. Supp. 2d at 326 ("Plaintiff's failure to seek these State remedies first prohibits his takings claim on the grounds of ripeness.").

Here, plaintiffs have failed to allege that they availed themselves (or attempted to avail themselves) of any available state procedures in an effort to obtain just compensation for the Village's alleged taking of the Property prior to commencing this action. Accordingly, the Complaint "does not adequately allege that [plaintiffs'] takings claim is ripe for adjudication in federal court," *see Rahl*, 2010 WL 3338832 at *5, and such claim is dismissed.

### C. *Plaintiffs' Fifth Amendment Due Process Claim is Dismissed*

To the extent that the third cause of action can be read as also asserting that defendant deprived plaintiffs of their due process rights in violation of the Fifth Amendment, such a claim must be dismissed because "the Fifth Amendment only applies to actions by the Federal

Government." *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 288 (E.D.N.Y. 2010); *see also Cassidy v. Scoppetta*, 365 F. Supp. 2d 283, 286 (E.D.N.Y. 2005) (dismissing claim for violation of Fifth Amendment due process rights when the plaintiffs had "not named the United States government or any agency or employee thereof as a defendant in this matter"). "The Fifth Amendment 'governs the conduct of the *federal* government and *federal* employees, and does not regulate the activities of state officials or state actors.'" *Cassidy*, 365 F. Supp. 2d at 286 (quoting *Dawkins v. City of Utica*, 1997 WL 176328, at *4 (N.D.N.Y. Apr. 4, 1997)) (emphases in the original). Accordingly, to the extent that the third cause of action seeks relief based upon alleged violations of plaintiffs' Fifth Amendment due process rights, that claim is dismissed. *See Guadagni v. N.Y. City Transit Auth.*, 2009 WL 1910953, at *7 (E.D.N.Y. June 30, 2009) ("The right to due process guaranteed by the Fifth Amendment [ ] applies only with regard to the federal government . . . .").[3]

### D. Plaintiffs' "Civil Rights" Claim is Dismissed

Plaintiffs' sixth cause of action is entitled "Civil Rights" and seeks relief based upon defendant's alleged deprivations of plaintiffs' "civil rights under the United States Constitution, the New York State Constitution, New York Eminent Domain Procedure Law, and the Real Property Actions Procedure Law, all in violation of 42 U.S.C. § 1983." (Compl. ¶ 69.) The

---

[3] The Court notes that the Complaint does not explicitly state a cause of action based upon on any alleged denial of plaintiffs' Fourteenth Amendment due process rights. Plaintiffs' opposition papers, however, make a passing reference to a "fourteenth amendment due process claim as to the construction of a permanent structure on plaintiffs' property." (Pls.' Opp'n at 8.) As set forth below, plaintiffs will be given an opportunity to file a motion for leave to amend their Complaint. Should plaintiffs wish to assert a Fourteenth Amendment due process claim, they should so indicate in their pre-motion conference letter.

deficiency with this cause of action does not stem merely from semantics; plaintiffs have failed to identify any particular constitutional provision that defendant has allegedly violated. As noted above, "Section 1983 does *not* create any substantive rights, and thus 'one cannot go into court and claim a "violation of § 1983" – for § 1983 by itself does not protect anyone against anything.'" *Alberti v. Cnty. of Nassau*, 393 F. Supp. 2d 151, 161 (E.D.N.Y. 2005) (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)) (emphasis in the original). Thus, to the extent plaintiffs are purporting to assert a claim based solely upon a violation of Section 1983, the sixth cause of action must be dismissed.

### E. *Plaintiffs' Fourteenth Amendment Equal Protection Claim is Dismissed*

In their seventh cause of action, plaintiffs allege that they were "singled out for disparate treatment" by the Village in violation of their Fourteenth Amendment equal protection rights. (*See* Compl. ¶ 72.) An equal protection claim may be pled in one of two ways. First, an equal protection claim based upon selective enforcement of the law must set forth allegations that: (1) plaintiffs were "treated differently from other similarly situated" property owners, and (2) "such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (internal quotation marks omitted).

In the alternative, "failing proof of selective treatment based on impermissible considerations," plaintiffs must plead a "class of one" equal protection claim. *See Everitt v. DeMarco*, 704 F. Supp. 2d 122, 135 (D.Conn. 2010). "The Supreme Court has 'recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she

14

has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Based on the allegations contained in the Complaint, it appears that plaintiffs are proceeding under a "class of one" theory. *See Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, 2009 WL 3151200, at *6 (E.D.N.Y. Sept. 29, 2009) (construing equal protection claim as a "class of one" claim when plaintiffs alleged that they were "unfairly singled out by Defendants in violation of the Equal Protection Clause").[4] "'[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Ruston*, 610 F.3d at 59 (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)) (alteration in the original). "'Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.'" *Id.* at 59-60 (quoting *Clubside, Inc.*, 468 F.3d at 159). "[T]he standard for

---

[4] Even if plaintiffs' equal protection claim was properly classified as a selective enforcement claim, it would still fail because plaintiffs have not identified similarly situated comparators, as described *infra* in the text. *See Dones v. City of New York*, 2008 WL 2742108, at *7 (S.D.N.Y. July 9, 2008) (finding "the standard for 'similarly situated' when bringing a selective enforcement claim is the same as in a 'class of one' claim"); *Kamholtz v. Yates Cnty.*, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) ("The similarly situated standard here [in the context of a selective enforcement claim] is the same as that for [ ] class-of-one claims."), *aff'd* 350 Fed. Appx 589 (2d Cir. 2009).

determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are prima facie identical." *Kamholtz*, 2008 WL 5114964, at *5 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)) (internal quotation marks omitted, alterations in the original).

The Court finds that plaintiffs have failed to allege the existence of sufficiently similarly situated comparators. Here, the only allegations made by plaintiffs in support of their equal protection claim are: (1) "there are not less than seven private streets in Bayville that have the same or similar barricades maintained by private property owners as that maintained by plaintiffs herein," (2) defendant "has not taken actions against these similarly situated property owners and has singled out plaintiffs for disparate treatment," and (3) "[t]here is no rational basis for treating plaintiffs differently than the rest of the class of property owners similarly situated to plaintiffs herein." (Compl. ¶¶ 71–73.) The Court presumes, based upon the allegations contained in the Complaint, that plaintiffs' equal protection claim is based upon defendant's removal of the hedge, grass, etc. in the Disputed Area.[5] Plaintiffs have failed to allege, however, that any of the "similar" barricades maintained by other private property owners were judicially declared to be a public nuisance, or that the comparator private property owners had been enjoined by a state court judge from interfering with Village efforts to remove their barricades. Because plaintiffs have failed to sufficiently allege the existence of comparators to whom they were "prima facie

---

[5] Because plaintiffs never specifically mention the State Court Action in the Complaint, the Court assumes that plaintiffs do not base their equal protection claim on an allegation that the Village initiated the State Court Action against them (and not similarly situated comparators) in violation of their equal protection rights. The Court further notes that the State Court Action was commenced on January 7, 2005 (Ans., Ex. C at 4), more than five years prior to the date the Complaint was originally filed.

identical," *see Kamholtz*, 2008 WL 5114964 at *5, their equal protection claim must be dismissed.

  **F.** ***The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining State Law Claims***

Pursuant to 28 U.S.C. § 1367(c)(3), the Court "may decline to exercise supplemental jurisdiction" over a state law claim when the Court "has dismissed all claims over which it has original jurisdiction." The Second Circuit has repeatedly emphasized that when "federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *See Klein & Co. Futures, Inc. v. Bd. of Trade of the City of New York*, 464 F.3d 255, 262 (2d Cir. 2006); *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). As discussed above, each of the plaintiffs' federal claims are dismissed and, therefore, the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims.

## *CONCLUSION*

For the reasons set forth above, defendant's motion is granted and the Complaint is dismissed in its entirety. Plaintiffs have not requested leave to amend the Complaint in the event that defendant's motion was granted. To the extent plaintiffs wish to request such leave, plaintiffs are directed to submit a pre-motion conference letter within thirty days of the date of this Order. Should plaintiffs fail to submit a pre-motion conference letter within thirty days of the date of this Order, their right to do so will be deemed waived, and the case will be marked closed.


**SO ORDERED.**

Dated:   Central Islip, New York
        November 21, 2011

                                                                /s/
                                                          Denis R. Hurley
                                                          United States District Judge