UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOHN VITERITTI and
MARGUERITE VITERITTI,

                              Plaintiffs,            **MEMORANDUM & ORDER**

     -against-                                  10 CV 3283 (DRH) (ARL)

INCORPORATED VILLAGE OF BAYVILLE,

                              Defendant.
--------------------------------------------------------X
**APPEARANCES:**

**EDWARDS & EDWARDS**
Attorneys for Plaintiff
336 South Ocean Avenue
Freeport, New York 11520
By:    Harrison J. Edwards, Esq.

**MORRIS DUFFY ALONSO & FALEY**
Attorneys for Defendant
Two Rector Street
New York, New York 10006
By:    Drew William Sumner, Esq.
        Carl S. Sandel, Esq.

**HURLEY, Senior District Judge:**

      Plaintiffs John and Marguerite Viteritti ("plaintiffs" or "the Viterittis") commenced this

action alleging that defendant Incorporated Village of Bayville ("defendant" or the "Village")

seized a portion of their real property, thereby violating, *inter alia*, their Fourteenth Amendment

equal protection rights.  Plaintiffs also asserted state law causes of action for trespass, private

nuisance, negligence, and violations of Section 853 of the New York Real Property Actions and

Proceedings Law.  By Memorandum & Order dated November 21, 2011, the Court dismissed the

Complaint but granted plaintiffs leave to move to amend.  Presently before the Court is plaintiffs'

motion, made pursuant to Federal Rule of Civil Procedure ("Rule") 15, seeking to file an

Amended Complaint.  For the reasons set forth below, plaintiffs' motion is denied.

## BACKGROUND

The following facts are taken from the proposed Amended Complaint ("Am. Compl."), including the exhibits attached thereto,[1] and are presumed true for purposes of this motion.

### The Property

The Viterittis are a married couple who reside at and own certain real property located at 1 Tides Court, Bayville, New York, which is "more fully described as Section 29, Block 104, Lots 20 and 27 on a Land and Tax Map duly filed in the Office of the Clerk of the County of Nassau" (the "Property").  (Am. Compl. ¶¶ 1-4.)  The Village is a municipal corporation duly organized and existing under the laws of the State of New York.  (*Id.* ¶ 6.)[2]

The area surrounding the Property consists of one public road and several private, "non-thru" streets.  Godfrey Avenue, one of only three public roads in the entire Village, lies south of the Property and intersects with Shore Road.  (*Id.* ¶ 18.)  Shore Road, in turn, runs in a northeasterly direction from its intersection with Godfrey Avenue until it dead-ends "at a 'T' intersection" with Tides Court, a private cul-de-sac located "in front of" the Property.  (*Id.* ¶¶ 16, 18, 19.)  According to plaintiffs, Shore Road "is a private road owned by the owners of Tides

---

[1]  Defendant argues that plaintiffs' motion to amend should be denied as futile. "[D]eterminations of futility on a motion for leave to amend are subject to the same standards as motions under Rule 12(b)(6)."  *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 2011 WL 1142916, at *4 (S.D.N.Y. Mar. 22, 2011).  Thus, the Court may properly rely on material attached to the proposed Amended Complaint when deciding the present motion to amend.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[2]  Although the proposed Amended Complaint includes the Village Board of Trustees, which is described as "the governing body" of the Village, under the sub-heading "Defendant" (Am. Compl. ¶ 7), the Village Board of Trustees is not listed as a defendant in the caption.

Court properties, including plaintiffs herein, and the owners of Shore Road properties." (*Id.* ¶ 22.)  Plaintiffs allege that between approximately 1973 and April 21, 2009, all vehicular traffic accessed Tides Court by traveling north on Shore Road from Godfrey Avenue. (*Id.* ¶ 18.)  That portion of Shore Road "has never been a public road and has never been maintained by Bayville, the County of Nassau, or the Town of Oyster Bay." (*Id.* ¶ 22.)

Between approximately 1973 and April 21, 2009, the southern portion of the Property that abutted the "'T' intersection" of Tides Court and Shore Road consisted of "a manicured landscaped lawn with miscellaneous decorative boulders located on it." (*Id.* ¶ 17.)  The northerly portion of that section of the Property contained a fence and hedge. (*Id.* ¶ 23.)  North of the Property, "Shore Road resume[d] as a private non-thru street, projecting north and intersecting with three other non-thru streets – Saltaire Lane, Washington Avenue and Arlington Lane." (*Id.* ¶ 24.)  In other words, for thirty-six years prior to April 21, 2009, these three private "non-thru streets," which lay north of the Property, merged into Shore Road, ran south toward the Property, and "'dead ended' at the northerly end of the Viteritti property line adjacent to" the fence and hedge. (*Id.* ¶ 25.)

To partially reiterate, plaintiffs describe the area surrounding the Property as follows: "For thirty-six years prior to April 21, 2009, the private road known as and by Shore Road stopped at plaintiff[s'] southerly property line and resumed at plaintiff[s'] northerly property line at the Viteritti fence and hedge." (*Id.* ¶ 27.)  The area of the Property at issue here (the "Disputed Area") lays between Shore Road's T-intersection with Tides Court on the southern edge of the Property and the location where Shore Road resumed north of the Property.  Plaintiffs allege that the Disputed Area was "used . . . as private property and was improved with a manicured

landscaped lawn . . . together with [a] fence and hedge . . . ." (*id.* ¶ 28), and during that time

"there was no vehicular traffic across" the Property (*id.* ¶ 29).

### The State Court Action

On January 7, 2005, the Village commenced an action against plaintiffs in New York

State Supreme Court, Nassau County (the "State Court Action") before Supreme Court Justice

Kenneth A. Davis.  Justice Davis described the State Court Action as "an action for a permanent

injunction restraining [the Viterittis] from obstructing Shore Road, a paved thoroughfare located

in the Village of Bayville."  (Am. Compl., Ex. A at 1, 4.)  More specifically, the Village sought

to have the Disputed Area of the Property (which Justice Davis referred to as "the barricade")

declared a public nuisance and removed.  (*Id.* at 4.)  The Viterittis counterclaimed seeking a

declaratory judgment that the Disputed Area "is part of their private property and not a Village

street."  (*Id.* at 4-5.)

On January 29, 2008, Justice Davis rendered a decision on the parties' motions for

summary judgment in the State Court Action.  (Am. Compl., Ex. A.)  In that decision, he

described the Disputed Area as follows:

> In 1976, John Viteritti erected a barricade across Shore Road at a
> point north of its intersection with Tides Court and between lot 20
> and lot 27.  The barricade is 29 feet long and 4 ½ feet high.  It is
> presently comprised of "decorative boulders," a fence, shrubs, grass,
> and Belgium blocks. . . . Because of the barricade, Tides Court is not
> accessible from streets to the north.  The only means of ingress is to
> take Godfrey Avenue to Shore Road, approaching from the south.

(*Id.* at 3.)  After reviewing the evidentiary record, Justice Davis concluded that Shore Road,

which "was originally a private right of way," (*id.* at 1), had not been "dedicated to the Village of

Bayville as a public street," (*id.* at 7), and had "not become a public street by prescription" (*id.* at

4

8).  The court noted, however, that "a public nuisance may also exist on private property, if the property, health or safety of a considerable number of persons is effected."  (*Id.* at 9.)  Justice Davis ultimately concluded that: "[T]he erecting of the barricade on Shore Road was a substantial interference with the health and safety of residents south of the barricade because it interfered with their rights to fire protection and also police, ambulance, and other emergency services."  (*Id.*)  The court also found that the barricade "also interfere[d] with public access to Shore Road, which would otherwise be unimpeded despite its character as a private street."  (*Id.*)

Justice Davis declined to issue a mandatory injunction requiring the Viterittis to remove the barricade, but ruled that "the Village may remove the obstruction itself, subject to a right of recoupment of expense from the [Viterittis]," and noted that "since the obstruction is accessible via Godfrey Lane and Shore Road, the Village need not encroach significantly upon the Viteritti's property in order to abate the nuisance."  (*Id.* at 10-11.)  Thus, an injunction was issued that prohibited the Viterittis "from interfering with efforts of the Village to remove the barricade on Shore Road."  (*Id.* at 11.)

***The Village's Subsequent Alleged Conduct***

Plaintiffs allege that on April 21, 2009, "in addition to removing the 29' long 4 ½' high fence, shrubs and boulders south of [the] fence and hedge," i.e., the area that Justice Davis defined as the barricade, the Village took possession of, and forcibly ejected plaintiffs from, a 100-foot-by-25-foot portion of the Property without their consent.  (Am. Compl. ¶ 35.)  According to plaintiffs, not only did the Village remove "the fence, hedge, boulders and Belgian blocks referenced in Justice Davis' January 29, 200[8] order," the Village also removed plaintiffs' lawn, decorative boulders, fence, and shrubbery irrigation system and "constructed a

5

100' x 25' road across plaintiffs' property, connecting Shore Road north of plaintiffs' property to Shore Road south of [plaintiffs'] property, [thereby] creating a thru-street across plaintiffs' property." (*Id.* ¶¶ 37-39.) Plaintiffs contend that defendant's actions were "not authorized by Judge Davis' January 29, 200[8] Order, which made no findings or direction relative to the removal of Plaintiffs' lawn, irrigation system, or the installation of a road across Plaintiffs' property." (*Id.* ¶ 41.)

Plaintiffs also assert that Shore Road "is a non-thru street" (*id.* ¶ 60), and contends that "pursuant to Chapter 64 of the Code of Bayville, only the owners of a private non-thru street may effect repairs and improvements to private streets and, upon such an application, the Defendant is required to conduct a public hearing, on notice duly published fourteen (14) days prior to the hearing and prior to approving proposed repairs, alterations or improvements to private non-thru streets" (*id.* ¶ 61). Plaintiff asserts that defendant "unilaterally install[ed] a private road" in violation of Chapter 64 of the Village Code, and that "no other private, non-thru street in Bayville has been unilaterally improved, changed or altered by Defendant Bayville." (*Id.* ¶ 68.)

***The Original Complaint***

The Complaint was filed in New York Supreme Court, Nassau County on June 30, 2010, but defendant removed the action to this Court on July 19, 2010 based on federal question jurisdiction. In the original Complaint, plaintiffs asserted that defendant had "taken plaintiffs' property without just compensation and/or without due process of law" in violation of the Fifth Amendment, and had violated plaintiffs' Fourteenth Amendment equal protection rights. (Nov. 21, 2011 Order at 5.) Plaintiffs also asserted a generic cause of action for violation of their "Civil Rights," as well as state law claims for trespass, private nuisance, negligence, and a

6

violation of Section 853 of the New York Real Property Actions and Proceedings Law ("NY RPAPL").  (*Id.* at 5-6.)

In its November 21, 2011 Memorandum & Order ("November 21 Order"), the Court dismissed plaintiffs' Fifth Amendment takings claim as unripe for review (*id.* at 12) and dismissed their Fifth Amendment due process claim as inadequately pled (*id.* at 13).  The Court also dismissed plaintiffs' "Civil Rights" claim because plaintiffs "failed to identify any particular constitutional provision that defendant has allegedly violated."  (*Id.* at 13-14.)  In a footnote, the Court noted that although the Complaint did not assert a cause of action based upon any alleged denial of plaintiffs' Fourteenth Amendment due process rights, their papers filed in opposition to defendant's motion to dismiss made "a passing reference to a 'fourteenth amendment due process claim as to the construction of a permanent structure on plaintiffs' property.'"  (*Id.* at 13 n.3.)  The Court stated that, to the extent plaintiffs wished to request leave to amend their pleading to assert such a claim, they should so indicate in their motion papers.  (*Id.*)

The Court also dismissed plaintiffs' Fourteenth Amendment equal protection claim, which was pled under a "class of one" theory, on the grounds that "plaintiffs have failed to allege the existence of sufficiently similarly situated comparators."  (*Id.* at 16.)  Specifically, plaintiffs had "failed to allege [ ] that any of the 'similar' barricades maintained by other private property owners were judicially declared to be a public nuisance, or that the comparator private property owners had been enjoined by a state court judge from interfering with Village efforts to remove their barricades."  (*Id.*)  Having dismissed each of plaintiffs' federal claims, the Court declined to exercise supplemental jurisdiction over plaintiffs' state law claims.  (*Id.* at 17.)

***The Amended Complaint***

In their Amended Complaint, plaintiffs have asserted a Fourteenth Amendment procedural due process claim, contending that defendant deprived them of their protected property rights and that "there is no provision in the Code of Bayville that provide[d] plaintiffs with an opportunity for a hearing prior to Defendant's deprivation of their property rights, nor is there [a] provision for a post-deprivation hearing." (Am. Compl. ¶ 79.) Plaintiffs also assert that their Fourteenth Amendment equal protection rights have been violated, and allege that although "there are not less than ten private non-thru streets in Bayville that are owned by private property owners whose properties adjoin[ ] said private non-thru streets," defendant has not "unilaterally repaired any of these private non-thru streets or any portions thereof" without complying with the requirements of Chapter 64 of the Village Code. (*Id.* ¶¶ 87-90.)[3]

Plaintiffs also assert state law claims for trespass, private nuisance, negligence, and a violation of Section 853 of the NY RPAPL. Plaintiffs seek an award of money damages, a declaratory judgment that defendant violated plaintiffs' constitutional and statutory rights, and permanent injunctive relief prohibiting defendant from interfering with plaintiffs' property rights.

## DISCUSSION

### I.   Legal Standard

Pursuant to Rule 15(a), the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010). A motion to amend may be denied, however, upon a

---

[3]   Plaintiffs have not re-asserted any claimed violation of the Fifth Amendment takings or due process clauses.

showing of the futility of the proposed amendment. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). "[T]he standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12 (b)(6) motion to dismiss – namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." *Crippen v. Town of Hempstead*, 2009 WL 803117, at *1 n.1 (E.D.N.Y. Mar. 25, 2009). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II.   *Procedural Due Process Claim*

### A.      *The Parties' Contentions*

Defendant asserts that plaintiffs' motion to amend its pleading to add a procedural due process claim must be denied as futile.  Specifically, defendant contends that an Article 78 proceeding "constitutes a wholly adequate post-deprivation hearing for due process purposes," and that plaintiffs failed to avail themselves of such a remedy.  (Def.'s Opp'n at 5 (internal quotation marks omitted).)  Plaintiffs assert that they were entitled to some form of pre-deprivation process, such as the notice and public hearing contemplated by Chapter 64 of the Bayville Code.  (Reply Mem. at 3-4.)

### B.      *Legal Standard*

"In order to assert a violation of procedural due process rights, a plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.'" *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 487 (E.D.N.Y. 2009) (quoting *Local 342, Long*

9

*Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194

(2d Cir. 1994)) (alteration in the original).  "The Due Process Clause does not protect against all

deprivations of constitutionally protected interests in life, liberty, or property, 'only against

deprivations without due process of law.'" *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d

458, 464 (2d Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)).

      Here, defendant does not dispute that plaintiffs have identified a protected property right

and that plaintiffs have alleged a deprivation of that right.  The key point of dispute is what

process was due to plaintiffs – they contend that they were entitled to some form of pre-

deprivation process, while defendant asserts that post-deprivation process alone was sufficient.

As the Second Circuit has recognized, "in evaluating what process satisfies the Due Process

Clause, 'the Supreme Court has distinguished between (a) claims based on established state

procedures and (b) claims based on random, unauthorized acts by state employees.'" *Id.* at 465

(quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC")*, 101 F.3d

877, 880 (2d Cir. 1996)).  "When the state conduct in question is random and unauthorized, the

state satisfies procedural due process requirements so long as it provides meaningful post-

deprivation remedy."  *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)); *see also Reed v.

Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 611 (E.D.N.Y. 2011).  Thus, if the Court

construes plaintiffs' allegations as concerning "a random act by a state actor," then the

availability of a post-deprivation remedy, such as an Article 78 proceeding, "is dispositive" of

their procedural due process claim.  *Rios v. Town of Huntington Hous. Auth.*, 2012 WL 1185941,

at *7 (E.D.N.Y. Apr. 10, 2012).

      If, on the other hand, the complained-of "deprivation is pursuant to an established state

procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Rivera-Powell*, 470 F.3d at 465 (citing *HANAC*, 101 F.3d at 880).  In that case, "'the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.'" *Id.* (quoting *HANAC*, 101 F.3d at 880).  Thus, if plaintiffs' allegations concern "the state's established pre-deprivation procedures . . . then a federal cause of action may lie because the availability of a post-deprivation remedy in the form of an Article 78 proceeding is irrelevant." *Rios*, 2012 WL 1185941 at *7.

### C.  *Plaintiffs Were Provided With Adequate Process*

Despite plaintiffs' assertion that they were entitled to some form of pre-deprivation process, they have not set forth their position on the relevant dispositive inquiry:  whether defendant's complained-of conduct in this case was random and unauthorized, or whether it was undertaken pursuant to established state procedures.  The Second Circuit has noted that "[t]he distinction between random and unauthorized conduct and established state procedures[ ] is not clear cut." *Rivera-Powell*, 470 F.3d at 465.  As a general rule, "government actors' conduct cannot be considered random and unauthorized . . . if the state delegated to those actors the power and authority to effect the very deprivation complained of . . . and the concomitant duty to initiate the procedural safeguards set up by state law, even if the act in question was not . . . sanctioned by state law." *Id.* (internal quotation marks omitted).  Additionally, the Circuit has concluded that "the acts of high-ranking officials who are ultimate decision-makers and have final authority over significant matters, even if those acts are contrary to law, should not be considered random and unauthorized conduct for purposes of a procedural due process analysis."

11

*Id.* (internal quotation marks omitted).[4]

The crux of the allegations in the proposed Amended Complaint is that defendant overstepped the bounds of the authority articulated in Justice Davis's January 29, 2008 order by removing plaintiffs' lawn, shrubbery, and irrigation system, and by paving a 100' by 25' road across their property.  (Am. Compl. ¶¶ 38-42.)[5]  Plaintiffs do not address in the proposed Amended Complaint, or elsewhere, the manner in which defendant's conduct was said to be accomplished, i.e., whether it was done at the direction of a high-ranking official of the Village with knowledge of Justice Davis's order, or whether the removal was effected by lower-level employees who simply arrived at the Property and completed their work assignment.  Simply put, there is no information before the Court to suggest that the challenged conduct was undertaken in accordance with established state procedures – that is, "pursuant to a statute, code, regulation, or custom" or as the result of a decision made by a high-ranking official with "final authority over significant matters," *see Chase Grp. Alliance LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 152 n.3 (2d Cir. 2010) – thereby entitling plaintiffs to some form of pre-deprivation process. Given the absence of such information, the conduct under discussion is appropriately considered to be random and unauthorized conduct for purposes of the present procedural due process analysis.  As such, plaintiffs were not entitled to any pre-deprivation hearing.

---

[4]      The Circuit has reasoned that "[s]ince the state acts through its high-level officials, the decisions of these officials more closely resemble established state procedures than the haphazard acts of individual state actors . . . ." *Velez v. Levy*, 401 F.3d 75, 92 (2d Cir. 2005) (internal quotations omitted).

[5]      Indeed, plaintiffs emphasize in their motion papers that Justice Davis's "decision spoke strictly in terms of removing a barricade, which was described . . . as 29' long and 4 ½' high . . . Nowhere in this determination does the Court indicate that the Village of Bayville may install a road."  (Reply Mem. at 4.)

Thus, the Court must examine only whether plaintiffs were provided with sufficient post-deprivation process.  "[A]n Article 78 proceeding is sufficient post-deprivation process for an unauthorized deprivation of property."  *G.I. Home Dev. Corp. v. Weis*, 2012 WL 4679331, at *2 (2d Cir. Oct. 4, 2012) (unpublished) (citing *HANAC*, 101 F.3d at 881).  Plaintiffs have not articulated any reason why an Article 78 proceeding was an inadequate post-deprivation remedy in this case, and have offered no explanation why they failed to avail themselves of that remedy.

In sum, based on the allegations in the proposed Amended Complaint and the information before this Court, plaintiffs have not shown that they were entitled to any pre-deprivation process, and have also failed to show that the post-deprivation process available to them was inadequate.  Therefore, plaintiffs' procedural due process claim is futile and their motion to amend their pleading to assert such a claim is denied.

### III.    *Plaintiffs' Equal Protection Claim*

#### A.      *The Parties' Contentions*

Defendant contends that plaintiffs have failed to cure the deficiencies of their original equal protection claim because they "have again failed to sufficiently allege the existence of comparators to whom they were prima facie identical."  (Def.'s Opp'n at 4.)  Plaintiffs base their equal protection claim on their assertion that "no other property owners in Bayville who own properties adjacent to non-thru streets in the Village of Bayville have been subjected to the forced installation of a road across their property without the Defendant Bayville's compliance with the provisions of Chapter 64, Article 3 of the Bayville Code, which requires that Bayville conduct the equivalent of a pre-deprivation hearing on notice prior to imposing repairs and improvements on private thru-streets and/or private roads that are non-thru streets."  (Reply

13

Mem. at 1-2.)

  **B.  *Plaintiffs' Equal Protection Claim is Futile***

  As an initial matter, it is unclear whether plaintiffs are asserting a "selective enforcement"

or "class of one" equal protection claim.  To maintain a selective enforcement claim, plaintiffs

must plead that: "(1) they were 'treated differently from other similarly situated' [entities] and (2)

this 'differential treatment was based on impermissible considerations such as race, religion,

intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to

injure a person.'" *Butler v. City of Batavia*, 323 Fed. Appx. 21, 22 (2d Cir. Apr. 6, 2009)

(quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)).  On the other

hand, to successfully assert a "class of one" claim, plaintiffs must allege that they have "been

intentionally treated differently from others similarly situated and that there is no rational basis

for the difference in treatment." *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58

(2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

  To maintain either a selective enforcement or class of one claim, plaintiffs must allege the

existence of similarly situated comparators.  There appears to be some disagreement within the

Circuit as to the definition of the "similarly situated" standard in "selective enforcement," as

opposed to "class of one," equal protection claims.  *See Vassallo v. Lando*, 591 F. Supp. 2d 172,

184 n.9 (E.D.N.Y. 2008).  Some district courts have stated that "the standard for 'similarly

situated' when bringing a selective enforcement claim is the same as in a 'class of one' claim."

*Dones v. City of New York*, 2008 WL 2742108, at *7 (S.D.N.Y. July 9, 2008); *see also Kamholtz

v. Yates County*, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) ("The similarly situated

standard here [in the context of a selective enforcement claim] is the same as that for [ ] class-of-

one claims."), *aff'd* 350 Fed. Appx 589 (2d Cir. 2009).  Thus, these courts have required

plaintiffs asserting either "class of one" or "selective enforcement" equal protection claims to

"establish that (i) no rational person could regard the circumstances of the plaintiff to differ from

those of a comparator to a degree that would justify the differential treatment on the basis of a

legitimate government policy; and (ii) the similarity in circumstances and difference in treatment

are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  *See*

*Ruston*, 610 F.3d at 59 (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006))

(internal quotation marks omitted).

Other courts within this Circuit, however, have "employ[ed] the slightly different

formulations set forth by the Second Circuit for each [type of] claim."  *Vassallo*, 591 F. Supp. 2d

at 184 n.9; *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679,

694-95 (S.D.N.Y. 2011) (collecting and comparing cases).  For example, the *Vassallo* court

applied the *Ruston* definition of "similarly situated" to a class-of-one claim, and then applied a

lesser standard of "similarly situated in all material respects" in its analysis of a selective

enforcement claim.  *Vassallo*, 591 F. Supp. 2d at 184 (quoting *Sebold v. City of Middletown*,

2007 WL 2782527, at *26 (D. Conn. Sept. 21, 2007)) (internal quotation marks omitted).

Even assuming *arguendo* that plaintiffs have asserted a selective enforcement (rather than

class of one) claim and that a less demanding standard of similarly situated applies, the Court

concludes that plaintiffs have failed to articulate how their property could be viewed by a

reasonably prudent person as being roughly equivalent to the comparator properties located on

private non-thru streets.  *See Yajure v. DiMarzo*, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001)

(noting that "[t]he test for determining whether persons similarly situated were selectively treated

15

is whether a prudent person, looking objectively at the incidents, would think them roughly

equivalent").  Critically, plaintiffs have failed to allege that any of the comparator property

owners maintained "barricades" that were deemed by a state court to be a public nuisance or

were enjoined from interfering with Village efforts to remove such barricades.  Plaintiffs allege

that other private non-thru streets, which are technically owned by private owners, have "broken

pavement, large potholes, ruts and ridges that pose safety hazards to fire, police and ambulance

vehicles" but have not been "unilaterally repaired" by the Village.  (Am. Compl. ¶¶ 89, 90.)

However, a 29-foot long, 4 1/2-foot high structure, comprised of boulders, a fence, and shrubs,

which completely blocks any vehicular access to a street is not a condition that could be viewed

by a reasonably prudent person as being roughly equivalent to broken pavement or large

potholes.

Given that plaintiffs have failed to meet even the lesser standard of "similarly situated,"

they cannot maintain an equal protection claim under either a selective enforcement or class of

one theory.  Thus, plaintiffs' motion to amend their Complaint to assert an equal protection claim

is denied.

**IV.    *The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining State Law Claims***

Pursuant to 28 U.S.C. § 1367(c)(3), the Court "may decline to exercise supplemental

jurisdiction" over a state law claim when the Court "has dismissed all claims over which it has

original jurisdiction."  The Second Circuit has repeatedly emphasized that when "federal claims

are eliminated in the early stages of litigation, courts should generally decline to exercise pendent

jurisdiction over remaining state law claims."  *See Klein & Co. Futures, Inc. v. Bd. of Trade of*

16

*the City of New York*, 464 F.3d 255, 262 (2d Cir. 2006).  Because plaintiffs' motion to amend

their Complaint to assert federal due process and equal protection claims is denied, the Court

declines to exercise supplemental jurisdiction over any of plaintiffs' asserted state law claims.

### *CONCLUSION*

For the reasons set forth above, plaintiffs' motion to amend the Complaint is denied.  The

Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
　　　　January 14, 2013　　　　　　　　　　　　 _/s/_____

　　　　　　　　　　　　　　　　　　　　　　　　Denis R. Hurley
　　　　　　　　　　　　　　　　　　　　　　　　Unites States District Judge